WALKER *v.* MISSISSIPPI MENHADEN PRODUCTS, INC.

No. 42158          January 22, 1962          136 So. 2d 607

*Donald W. Cumbest,* Pascagoula; *Albert Sidney Johnston, Jr.,* Biloxi, for appellant.

858

*Merle F. Palmer,* Pascagoula, for appellee.

Jones, J.

For brevity we refer to Mississippi Menhaden Products, Inc., as Menhaden; to Delta Towing and Transportation Company, Inc., as Delta, and to Arnold V. Walker, as Walker.

Menhaden had a Menhaden fish processing plant at Moss Point, Mississippi; Delta was the owner of fishing vessels; Walker was the owner of forty-eight percent of the stock of Delta. Menhaden sued Delta and Walker in the Circuit Court of Jackson County for the sum of $18,915.72 due under the terms of a contract hereinafter mentioned. Delta made no answer and suffered default judgment. Walker appeared and defended. The court gave a peremptory instruction against him and he appeals here.

On February 12, 1957, Menhaden contracted with Delta (with Walker as guarantor), under the terms of which contract Delta would furnish five Menhaden fishing vessels to fish in the Gulf of Mexico and adjacent waters and deliver their catch subject to the terms of said contract to Menhaden. They were to receive compensation as set out in said contract.

We shall refer to such parts of the contract as we deem relevant to a decision of this case.

With reference to Walker as guarantor, the contract recited in the preamble, ''Whereas, the guarantor, in order to induce the processor to enter into this agreement, is desirous of guaranteeing to the processor (Menhaden) the full, due and complete performance of this agreement by the boat owner (Delta).''

Paragraph 17 of the contract provided: ''The Guarantor hereby covenants and agrees with the Processor, in consideration of the Processor entering into this agreement, that he, the said Guarantor, will and does

hereby guarantee the full performance and fulfillment by the Boat Owner of all duties, obligations, and responsibilities imposed upon the Boat Owner by this agreement. And the Guarantor further agrees that he shall be bound by any renewals hereof made under the preceding paragraph unless he shall have served written notice by Registered Mail to the Processor not later than the 15 day of September of the preceding season of his intention not to be bound by such renewal.''

Paragraph 19 provided: ''This written agreement constitutes the entire agreement and contract between the three parties hereto and any changes must appear in writing signed by all the parties hereto.''

This was an absolute guaranty. 38 C.J.S., page 1139, Sec. 7.

To understand the other questions involved, we quote paragraphs 6, 7 and 12 of the contract, as follows:

''(6) Processor agrees to advance to Boat Owner at the expiration of each two-week period the sum of Six and 25/100 Dollars ($6.25) per thousand for all fish delivered by the vessels during the preceding two calendar weeks, until five such payments have been made and thereafter the sum of Seven Dollars ($7.00) per thousand for all fish delivered by the vessels during the preceding two calendar weeks, but in no event shall Processor be required to pay an amount in excess of eighty percent (80%) of the estimated value of said fish.

''(7) Processor agrees that it will purchase for the account of the Boat Owner one net each season for each vessel furnished by Boat Owner if requested to do so by Boat Owner. Such nets shall be charged to said vessels and/or the Boat Owner and payment shall be made at the end of the season out of the final settlement after all bulk fish scrap and bulk fish oil have been sold. If there is not a sufficient amount due to the Boat Owner

to pay for said nets then Boat Owner agrees to pay to Processor the balance on the purchase price thereof.

"(12)   It is mutually understood and agreed that Boat Owner cannot require a final settlement of Processor until the full amount of bulk scrap and bulk oil produced shall have been completely sold and the proceeds collected. Processor hereby agrees to use his best efforts to collect all accounts from the sale of said products, but is not a guarantor thereof. The Processor agrees to furnish a statement of account at the expiration of such season, after all bulk scrap and bulk oil shall have been sold and collected for. Final settlement must be made before the beginning of the next succeeding fishing season.''

Menhaden filed with its declaration a statement of the account between it and Delta, showing that Delta, after certain advances to the vessels, had a net balance of $41,728.75; that there had been advances and supplies purchased at the boat owner's request of $38,104.21; that it had purchased nets under paragraph (7) in the sum of $25,717.68, making a total of $63,821.92, from which was deducted the net balance above mentioned, and also deducted the sum of $3,177.45, which was for certain advances made prior to the date of the contract, leaving a balance due of $18,915.72.

By his pleadings Walker denied that he was answerable generally to the plaintiff for fishing nets purchased in accordance with paragraph (7). He did not deny the execution of the contract.

He also claimed that Menhaden agreed and bound itself to retain under paragraph (6) a percentage of the amount due and that he, Walker, never authorized plaintiff to advance any more than the eighty percent therein mentioned. He also alleged failure to give notice of default to him as guarantor and also failure of demand on him. He filed a counterclaim alleging that Menhaden did not furnish to him an accounting from

time to time. There was no dispute as to the correctness of the account. The lower court sustained a motion for a peremptory instruction and held that under paragraph (6) Menhaden did not bind itself not to advance more than eighty percent, but that it could not be required to advance more than that percentage of the estimated value of fish. We think the lower court was correct in the construction of this paragraph.

██ ██ Further, we construe this agreement as an absolute guaranty and the same required no notice of default or demand. 38 C.J.S., Guaranty, Sec. 61, page 1216; Sec. 62, page 1222; Sec. 63, page 1223.

The proof showed that statements were furnished to Delta in accordance with the provision of the contract hereinbefore quoted. The case is affirmed.

Affirmed.

*Lee, P.J.,* and *Kyle, Gillespie* and *McElroy, JJ.,* concur.